ORIGINAL

FILED IN OPEN COURT
U.S.D.C. Atlanta

JUN 1 7 2013

James N. Hatten Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

  *v.*

GARY EDWIN SHARP II, A.K.A.
GARY EDWIN SHARP JR.,
JOSHUA RYAN TAYLOR, AND
SCOTT WALTON

Criminal Indictment

No. **1:14CR0229**

THE GRAND JURY CHARGES THAT:

### COUNT 1
#### (Conspiracy)

1. From in or about May 2011, through on or about August 21, 2012,

the exact dates being unknown, in the Northern District of Georgia and

elsewhere, defendants GARY EDWIN SHARP II, JOSHUA RYAN TAYLOR, and

SCOTT WALTON, did willfully, knowingly and unlawfully combine, conspire,

confederate, agree and have a tacit understanding with conspirator Kody Jon

Peterson, a/k/a "SnappzMarket Dev," and others known and unknown to the

Grand Jury, to commit certain offenses against the United States, including the

following: to willfully, and for purposes of commercial advantage and private

financial gain, infringe copyrights by reproducing and distributing, during a one

hundred and eighty (180) day period, at least ten copies of one or more

copyrighted works having a total retail value of more than $2,500 in violation of

1

Title 17, United States Code, Section 506(a)(1)(A), and Title 18, United States Code, Sections 2319(b)(1) and 2.

## Background

2. It is relevant to this Indictment that, during the time period relevant to this conspiracy:

a. Defendant GARY EDWIN SHARP II and conspirator Kody Jon Peterson established an alternative online market, called "SnappzMarket," for the purpose of reproducing and distributing pirated copies of Android mobile device software applications (or "apps") to SnappzMarket users in the Northern District of Georgia and elsewhere, and for purposes of commercial advantage and private financial gain through advertising revenue.

b. Defendant GARY EDWIN SHARP II was primarily responsible for handling the finances of SnappzMarket. Defendant SHARP also uploaded pirated copies of copyrighted Android apps onto SnappzMarket's computer servers.

c. Conspirator Kody Jon Peterson was primarily responsible for writing the computer code necessary to operate the SnappzMarket alternative online marketplace, under the web domain "www.snappzmarket.com," and the computer code creating the

2

SnappzMarket app necessary to distribute pirated copies of apps to SnappzMarket users' Android mobile devices. Conspirator Peterson was also responsible for configuring and operating a server in the Netherlands that hosted database content for SnappzMarket operations, and operating a server in France that hosted the SnappzMarket group's pirated copies of copyrighted apps and web content for SnappzMarket.

      d.    Defendant JOSHUA RYAN TAYLOR provided the computer servers necessary to host the initial version of SnappzMarket.

      e.    Defendant SCOTT WALTON was primarily responsible for handling public relations for SnappzMarket. In this role, defendant WALTON monitored the Facebook fan page for SnappzMarket, provided responses to support inquiries, developed new ideas for SnappzMarket, and assisted with finding solutions to technical problems. In addition, defendant WALTON searched for and downloaded copies of copyrighted apps, burned those copies to digital media such as compact discs ("CDs"), and mailed them to defendant GARY EDWIN SHARP II.

Manner and Means

    3.    The manner and means by which the conspiracy was carried out included, but were not limited to, the following:

3

a.    The object of the conspirators' illegal agreement was to unlawfully obtain, reproduce, and distribute copies of copyrighted works, namely, Android mobile device apps, through an alternative online market, called "SnappzMarket," without permission from the software developers and other owners of these copyrighted works, who would otherwise sell lawful copies of the apps on legitimate Android online markets for a fee to the general public.

b.    It was a part of the conspiracy to obtain by various means copies of the aforementioned apps that lacked any technological protection measures controlling access to, or copying of, the copyrighted software for the apps.  For example, conspirators circumvented or removed ("cracked") such access controls or copy controls on authorized copies of the apps, and did so without permission from the copyright owners of the apps.  Other conspirators, such as conspirator Kody Jon Peterson, reproduced and obtained over the Internet copies of apps that were already "cracked" by others – also without permission from the copyright owners.

c.    It was further a part of the conspiracy to rent computer servers, including servers located in the United States, France, and the Netherlands, to host one or more websites, such as "www.snappzmarket.com," and to provide digital storage for pirated

4

copies of copyrighted apps to allow conspirators to upload, download, store, and ready pirated copies of copyrighted Android apps for distribution to SnappzMarket users.

d.      It was further a part of the conspiracy to pay for and to register Internet domain names for use by SnappzMarket users, including www.snappzmarket.com.

e.      It was further a part of the conspiracy to distribute pirated copies of the apps to SnappzMarket users without authorization from the copyright owners.  Conspirator Kody Jon Peterson created a SnappzMarket app that SnappzMarket users could download to their Android mobile devices.  Through the SnappzMarket app, conspirators could distribute copies of the pirated apps from SnappzMarket's computer servers directly to SnappzMarket users' Android mobile devices.

f.      It was further a part of the conspiracy for defendant GARY EDWIN SHARP II to use PayPal and other bank accounts to receive on behalf of SnappzMarket (1) income generated from online advertisement services, including Adsense and/or Admob, on www.snappzmarket.com and (2) donations from SnappzMarket users.  After defendant SHARP transferred SnappzMarket's revenues from the SnappzMarket bank accounts to defendant SHARP's personal bank account, defendant SHARP

5

would pay SnappzMarket's operating expenses.  Defendant SHARP would then divide the remaining revenue equally between himself and conspirator Kody Jon Peterson.

g.   During and as a part of the conspiracy, the conspirators distributed over one million (1,000,000) copies of copyrighted apps, with a total retail value of over $1.7 million, to SnappzMarket users and others, in the Northern District of Georgia and elsewhere, all without authorization from the software developers and other copyright owners of the apps.  As a result of the conspiracy and the illegal reproduction and distribution of copies of copyrighted apps, the copyright owners of these apps suffered losses.

### Overt Acts

4.   In furtherance of this conspiracy, and to effect the objects and purposes thereof, defendants GARY EDWIN SHARP II, JOSHUA RYAN TAYLOR, and SCOTT WALTON, and their co-conspirators committed the following overt acts within the Northern District of Georgia and elsewhere, including but not limited to the following:

a.   On or about June 5, 2011, during online chat sessions, defendants GARY EDWIN SHARP II, JOSHUA RYAN TAYLOR, and

6

conspirator Kody Jon Peterson agreed to create a new alternative market for Android mobile device apps.

b.      On or about June 10, 2011, defendant SCOTT WALTON provided various logo designs to defendant GARY EDWIN SHARP II for the SnappzMarket website.

c.      On or about June 12, 2011, defendant JOSHUA RYAN TAYLOR registered the web domain name www.snappzmarket.com for the creation of an alternative marketplace for Android apps.

d.      On or about June 12, 2011, during online chat sessions, defendant GARY EDWIN SHARP II negotiated and agreed to pay defendant JOSHUA RYAN TAYLOR for server hosting for the purpose of hosting an alternative marketplace for Android apps.

e.      In June of 2011, during online chat sessions with other conspirators, defendant JOSHUA RYAN TAYLOR agreed to ignore any notices to take down pirated copies of copyrighted works that he received from copyright owners pursuant to the Digital Millennium Copyright Act ("DMCA takedown notices").

f.      On or about June 14, 2011, defendant GARY EDWIN SHARP II sent a payment to defendant JOSHUA RYAN TAYLOR for the registration of the web domain name www.snappzmarket.com.

g.      On or about June 15, 2011, defendant GARY EDWIN SHARP
II created a PayPal account in the name of SnappzMarket and linked his
personal bank account to the SnappzMarket PayPal account.

h.      On or about June 17, 2011, defendants GARY EDWIN SHARP
II and JOSHUA RYAN TAYLOR took steps necessary to conceal the
registration information of www.snappzmarket.com from being viewed by
the general public.

i.      On or about June 17, 2011, in an online chat, conspirator Kody
Jon Peterson appointed defendant SCOTT WALTON to be the
SnappzMarket discussion board moderator upon public launch of
SnappzMarket.

j.      On or about June 24, 2011, conspirator Kody Jon Peterson and
his co-conspirators released SnappzMarket 1.0 to the general public.

k.      On or about June 27, 2011, conspirator Kody Jon Peterson and
defendant GARY EDWIN SHARP II created Facebook accounts with
fictitious names to conceal the identity of the owners and operators of
SnappzMarket.

l.      On or about June 29, 2011, defendant SCOTT WALTON tested
a new release of the SnappzMarket application to ensure it functioned as
designed.

8

m.      On July 11, 2011 and July 12, 2011, defendant GARY EDWIN

SHARP II provided passwords via email to conspirator Kody Jon Peterson

for (1) the admin interface on a server related to SnappzMarket operations,

(2) e-mail accounts for www.snappzmarket.com accounts, (3) database

server accounts for SnappzMarket, twitter accounts, and an e-mail address

labeled "Server guys email" which belonged to defendant JOSHUA RYAN

TAYLOR.

n.      On August 1, 2011, defendant JOSHUA RYAN TAYLOR

provided a server for the web domain name www.snappzmarket.com and

provided the login details to defendant GARY EDWIN SHARP II via e-

mail.

o.      On or about August 5, 2011, defendant GARY EDWIN

SHARP II created a Google Adsense account for SnappzMarket for the

purpose of obtaining revenue from advertisements presented to

SnappzMarket users.

p.      Between August 26-28, 2011, an FBI undercover employee

who was also a SnappzMarket user, in the Northern District of Georgia,

downloaded 1,823 copies of pirated apps from SnappzMarket's computer

servers.

q.     On or about September 8, 2011, defendant GARY EDWIN SHARP II contacted via email an Internet hosting provider located in India to inquire how they deal with DMCA takedown notices and expressed an interest in leasing servers from the India-based provider.

r.     On September 17, 2011, defendant SCOTT WALTON provided via email a logo to defendant GARY EDWIN SHARP II for the 2.0 release of SnappzMarket.

s.     On October 29, 2011, defendant GARY EDWIN SHARP II emailed to conspirator Kody Jon Peterson the SnappzMarket 2.0 release logo that defendant SHARP had received from defendant SCOTT WALTON.

t.     On November 17, 2011, conspirator Kody Jon Peterson emailed defendant GARY EDWIN SHARP II new login credentials to give defendant SHARP direct access to the SnappzMarket server.

u.     On February 3, 2012, during online chat sessions, conspirator Kody Jon Peterson and defendant GARY EDWIN SHARP II agreed to send defendant JOSHUA RYAN TAYLOR money to help him with bills related to SnappzMarket, with conspirator Kody Jon Peterson stating that "we owe a lot of snappz to that guy" and "he has been with us from the start."

v.     On February 3, 2012, an FBI undercover employee who was also a SnappzMarket user, in the Northern District of Georgia, downloaded 1096 copies of pirated apps from SnappzMarket's computer servers.

w.     On February 4, 2012, conspirator Kody Jon Peterson advised defendant JOSHUA RYAN TAYLOR that defendant GARY EDWIN SHARP II and conspirator Peterson had agreed to send defendant TAYLOR approximately $600.00 to help with expenses, stating that they really appreciated everything defendant TAYLOR had done for SnappzMarket.

x.     On February 4, 2012, during online chat sessions, defendant JOSHUA RYAN TAYLOR confirmed that he received $315.00 via PayPal.

y.     On May 11, 2012, conspirator Kody Jon Peterson sent a beta copy of the SnappzMarket app to defendant GARY EDWIN SHARP II for testing.

z.     On May 25, 2012, an FBI undercover employee who was also a SnappzMarket user, in the Northern District of Georgia, downloaded 543 copies of pirated apps from SnappzMarket's computer servers.

All in violation of Title 18, United States Code, Section 371.

11

COUNT 2
(Criminal Copyright Infringement)

5.      From on or about August 26, 2011, through on or about February 22, 2012, in the Northern District of Georgia and elsewhere, defendant GARY EDWIN SHARP II willfully and for the purpose of private financial gain, did infringe copyrights by reproducing and distributing during a one hundred and eighty (180) day period ten (10) or more copies of one (1) or more copyrighted works, namely copyrighted mobile device software applications (or "apps"), with a total retail value of more than $2,500.

All in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Sections 2319(b)(1) and 2.

12

COUNT 3
(Criminal Copyright Infringement)

6.      From on or about February 23, 2012, through on or about August 21,

2012, in the Northern District of Georgia and elsewhere, defendant GARY

EDWIN SHARP II willfully and for the purpose of private financial gain, did

infringe copyrights by reproducing and distributing during a one hundred and

eighty (180) day period ten (10) or more copies of one (1) or more copyrighted

works, namely copyrighted mobile device software applications (or "apps"),

with a total retail value of more than $2,500.

All in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18,

United States Code, Sections 2319(b)(1) and 2.

## FORFEITURE

1.      Defendants GARY EDWIN SHARP II, JOSHUA RYAN TAYLOR, and SCOTT WALTON, if convicted of any of the violations alleged in counts one through three of this indictment, shall forfeit to the United States as part of the sentencing and pursuant to Fed. R. Crim. P. 32.2:

a.      Respecting count one, any real or personal property constituting and derived from proceeds obtained directly or indirectly as a result of, or traceable to, the violation of Title 18, United States Code, Section 371, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c);

b.      Respecting counts two through three:

i.      any article trafficked in and made in violation of Title 17, United States Code, Sections 506(a)(1)(A), and Title 18, United States Code, Sections 2319(b)(1), pursuant to Title 18, United States Code, Section 2323(a) & (b);

ii.      any property used, and intended to be used, in any manner or part to commit and to facilitate the violation of Title 17, United States Code, Sections 506(a)(1)(A), and Title 18, United States Code, Sections 2319(b)(1), pursuant to Title 18, United States Code, Section 2323(a) & (b); and

iii.      any property constituting, and derived from, any proceeds obtained directly or indirectly as a result of, or traceable to, the violation of Title 17, United States Code, Sections 506(a)(1)(A), and Title 18,

14

United States Code, Sections 2319(b)(1), pursuant to Title 18, United States Code, Section 2323(a) & (b); and

        c.     Any other property belonging to the defendants, up to the value of the property subject to forfeiture, if any property subject to forfeiture: (a) cannot be located upon the exercise of due diligence; (b) has been transferred to, sold to, or deposited with a third person; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be subdivided without difficulty.

        2.     The property subject to forfeiture under paragraph 7 includes, but is not limited to the following property:

Toshiba Laptop Computer Serial Number XA231784K

2 Assorted Compact Discs seized on August 21, 2012

Toshiba Satellite Laptop Serial Number 29145974W

Dell Inspiron Laptop Model 1564 Seized August 21, 2012

HP Altec 2000 Laptop Serial Number 584037-001

Samsung Galaxy SII Black Phone Seized August 21, 2012

Samsung Galaxy SII White Phone Seized August 21, 2012

All in accordance with Title 18, United States Code, Section 2323(a) & (b); Title

18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United

States Code, Section 2461(c); and Title 21, United States Code, Section 853(p).

A _____*True*_____ BILL

_____*Odith Bass*_____
FOREPERSON


SALLY QUILLIAN YATES
 *UNITED STATES ATTORNEY*

CHRISTOPHER C. BLY
 *ASSISTANT UNITED STATES ATTORNEY*
Georgia Bar No. 064634
75 Spring Street, S.W., Suite 600
Atlanta, Georgia 30303   (404) 581-6000


LESLIE R. CALDWELL
 *ASSISTANT ATTORNEY GENERAL*

JOHN H. ZACHARIA
 *ASSISTANT DEPUTY CHIEF FOR LITIGATION*
District of Columbia Bar No. 456867
U.S. Department of Justice, Criminal Division
Computer Crime and Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C.  20530   (202) 305-2310