IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) </br> ) |
| v. | ) CASE NO. 1:14-CR-227-03-TCB </br> ) and </br> ) 1:14-CR-229-01-TCB |
| GARY EDWIN SHARP, Jr., </br>    Defendant | ) </br> ) </br> ) |

DEFENDANT'S SENTENCING MEMORANDUM

This investigation and case have been pending for many years. During that time, Gary Sharp has accepted responsibility for his actions, demonstrated remorse for his involvement, and matured into a responsible father and contributing member of society. His post-conduct rehabilitation demonstrates to this Court that a sentence of confinement is not necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a).

There is one objection to the Guideline calculations in the PSR by the defense. It is to the enhancement for Role in the Offense, ¶152. The defense recognizes that Mr. Sharp should receive some upward adjustment for his role in the offense in SnappzMarket, but contends that the 4-level enhancement assessed in the PSR is too high. Additionally, Mr. Sharp should receive a downward adjustment for his mitigating role in Applanet; however, even if the Court applied a downward adjustment, it would have no effect on the resulting Guidelines calculation.

There are two reasons the Court should vary downwards from the resulting Guideline range in determining a reasonable sentence for Mr. Sharp. First, the loss calculation in this case overstates the seriousness of

1

the offense due to the nature of this particular case. Second, a consideration of Mr. Sharp's history and personal characteristics, in particular his post-offense rehabilitation and his current family situation, shows that the sentence contemplated by the Guidelines is too harsh.

1. **The Criminal Conduct In This Case Did Not Involve Five Or More Participants; Nor Was It Otherwise Extensive.**

Gary Sharp is charged in two different indictments for his conduct in two different alternative marketplaces for mobile phone applications: SnappzMarket and Applanet. Gary's involvement in Applanet spanned the time period from February 1, 2011 to approximately June of that same year. Around June of 2011, SnappzMarket was created – at which time, Gary's involvement with Applanet came to an end.

In paragraph 31, the PSR correctly notes that Gary's involvement with Applanet was that of a "super moderator" on Applanet's servers and Facebook page. His only compensation for his involvement in Applanet was one video game. Applanet functioned well before Gary got involved, and continue to function after Gary left. He did not direct anyone else's activities; he did not have decision-making authority about Applanet's operations; and he did not share in any profits Applanet may have made.

For SnappzMarket, Gary admittedly had a much more important role. He and Kody Peterson started SnappzMarket. Peterson was responsible for the coding and development of the website, while Gary handled the finances and more of the administrative side. Josh Taylor sought out SnappzMarket, through Gary, and offered to provide the computer servers necessary to host the website. Scott Walton was involved with SnappzMarket as well.

SnappzMarket did not involve five or more participants; there were four. There weren't any other individuals who were involved (who don't qualify as participants.) The criminal activity was not otherwise extensive; the criminal activity involved taking copyright-protected applications and making them available without the owner's permission.

Some circuits have set forth tests or factors to consider in evaluating whether criminal activity is otherwise extensive. The Second Circuit, Third Circuit and Sixth Circuit focus on the size of the criminal organization (counting heads of everyone involved, not just those defined as "participants" under the Guidelines.) See United States v. Anthony, 280 F.3d 694, 699 (6th Cir. 2002); United States v. Helbling, 209 F.3d 226 (3d Cir. 2000); United States v. Carrozzella, 105 F.3d 796, 802-03 (2d Cir. 1997). Other circuits focus more broadly on the totality of the circumstances, not just the number of participants and non-participants, but also the width, breadth, scope, complexity, and duration of the scheme. See United States v. Colon-Munoz, 318 F.3d 348 (2003). In a recent unpublished opinion, the Eleventh Circuit stated that our circuit seems to follow the broader, totality-of-the-circumstances approach of the First Circuit. United States v. Zada, 706 Fed.Appx. 500 (11th Cir. 2017) citing to United States v. Holland, 22 F.3d 1040, 1046 (11th Cir. 1994).

A consideration of the totality of the circumstances involved in this case – in SnappzMarket – shows the criminal conduct was not otherwise extensive. It was not especially complex, didn't span multiple states, with numerous people involved, and it wasn't particularly large in scope. SnappzMarket was in existence for some months, but not years. Gary's role in this offense warrants a two-level enhancement.

**2. The Loss Calculation Overstates the Seriousness of this Offense.**

The loss calculation in the Sentencing Guidelines in this case leads to a suggested sentence that is harsher than necessary, or appropriate, for the criminal conduct that occurred. The loss amount in the PSR is more than three million dollars for Gary. The loss guidelines don't take into account the defendant's motivation for committing the crime, how much the defendant personally profited, what financial harm the defendant intended, how much financial damage was caused, or various other factors that ought to have an impact on the resulting custody Guideline range. The Guidelines treat Gary equally with someone who stole three million dollars from peoples' retirement accounts, or embezzled three million dollars from their employer over a decade. And the Guidelines don't take into account the fact that any financial damages caused by Gary's conduct don't necessarily equate to the loss amount calculated by the Guidelines. It is virtually certain that many of the apps downloaded from SnappzMarket would NOT have been purchased; in other words, the people who downloaded the free applications from SnappzMarket only did so because they didn't have to pay for them. And in fact, some of the very same applications are now free. And while Gary did have some modest financial gain, it was nowhere near the three million dollar loss amount.

**3. Gary's Personal History and Characteristics Merit a Downward Variance.**

This case has been pending for almost four years; almost six years if you count the time since Sharp was interviewed by the FBI as part of their investigation. In that time, he has lost his job (because of his arrest in this case), gotten married, had a son, gotten divorced, and found a new job. His

4

mother's health has significantly deteriorated, to the point where she needs to move in with him.

As the PSR notes, Gary was born in Rhode Island and is the youngest of three children. His parents are divorced (his father is remarried.) Growing up, Gary was diagnosed with ADHD; he has also been diagnosed with anxiety, depression, paranoia, and bi-polar disorder. He treats his conditions with medication, when he can afford it.

His current doctor wrote a letter to the Court (which was mailed directly to chambers), listing his diagnoses. Although Dr. Hamel has only been treating Gary since January of this year, Gary has been a patient at West Bay Psychiatric Associates for 11 years.

At age 18, Gary enlisted in the Army. He was stationed at Ft. Stewart and served from 2005 to 2007.

After his involvement with Snappzmarket and Applanet, Gary worked in IT with Citizens Bank in Rhode Island. It was a good job, and he was well-respected there; but they had to terminate him once they learned about his indictment. His friend, and former supervisor, Keith Hansen, wrote a letter to the Court about Gary's character. He has known Gary for a long time – and (jokingly) considers Gary "the 7th son I never wanted." Keith hired Gary to work for Keith at Citizens Bank. He describes Gary's work ethic and how Gary was committed to doing his best at his job. Not only did Keith rely on Gary at work, but he relied on Gary at home too. He trusted Gary to watch his five oldest sons while he took his wife to the doctor during her last pregnancy. And he knew he could count on Gary to drop everything at a moment's notice to help out when Keith needed it. Keith has also known Gary as a father to Connor, and describes Gary as an

"amazing father" who gives Connor "confidence, strength, provides stability and . . . so much love."

Gary had a difficult time finding a decent job after his arrest; he received unemployment benefits for a time, and worked a modest-paying job at MD Calibrations. At the time the final PSR was written, Gary was unemployed. However, about a year ago he was hired at CVS Health in Rhode Island. His position is that of Technical Support. During the interview process, he disclosed his pending case and sentencing, and the company hired him anyways. This job allows him to support himself and his young son; and he plans to move out of his mobile home into a bigger home so his mother can move in with him – pending the outcome of his sentencing hearing.

Gary's mother, Arlene Denomme, has MS[1]. She also has diabetes, high blood pressure, severe insomnia, depression, and sciatica problems. Her health issues are severe. She has been completely disabled, and collecting Social Security Disability, since 2004. Arlene is unable to live alone; she falls frequently and has seizures. When she does fall, her injuries can be very serious – such as breaking a bone, or striking her head. She currently lives with her mother – who is 88 years old. Her mother has become unable to care for her, and now Arlene has to make alternate living arrangements. Her seizures can prevent her from being able to drive – sometimes for months. She has difficulty walking, and uses a walker at home, or a cane when she leaves the house. She has been to the emergency room multiple times within the past few years – especially now that her

---

[1] Arlene is unable to travel to be present for sentencing. She made a video-recorded statement for the Court's consideration. Undersigned counsel will provide a copy of the video to the Court and the government prior to sentencing.

6

mother is older. Her mother no longer has the physical strength and capacity to help her when she falls or has seizures; so her mother calls an ambulance instead. This also means that Arlene stays in the hospital longer – she has had to go to rehab to demonstrate to her doctor that she can walk with her walker, before being released, because of the concerns that her mother can't physically care for her during her recovery.

Gary wants to buy a house so his mother can move in with him. She wants to live with him as well. He is financially able to do so, but hasn't yet purchased a house because of the uncertainty of his sentence. Gary has two sisters, but they live in Indiana. Gary's mother cannot afford to live on her own and pay for someone to provide homecare, nor can she afford assisted living. She doesn't want to uproot her life and move to Indiana – away from her mother, from Gary, her doctors and other healthcare providers.

Gary is a proud father to Connor – his son who is two and a half years old. Gary married Katherine Renehan while this case was pending. Connor was born, and Gary and Katherine have since divorced. Gary and Katherine share custody of their son, but Gary is responsible for paying for Connor's daycare as well as much of Connor's other financial needs. Katherine's parents, Ed and Christa Renehan, still think highly of Gary, despite the dissolution of their daughter's marriage. They wrote a letter to the Court, and describe how they saw Gary mature during the time they knew him. They were initially unimpressed with Gary, but say he became more rounded, serious and reliable. They consider him a second son, and say he is a wonderful and loving father to Connor.

Gary's former brother-in-law – William Renehan wrote a letter also. He says Gary has always been wonderful to the Renehan family, and

William relied on Gary for support because William too has bi-polar disorder. William's letter was written more recently than Ed and Christa's. Gary is now in a new relationship, and William describes Gary's girlfriend as a positive and lovely woman. William says Gary is a solid role model for Connor.

Even Katherine wrote a letter to the Court on behalf of Gary, despite their break-up. She too says Gary has matured substantially during the time she has known him. She has seen Gary become more serious and responsible. Katherine describes Gary as the most loving and caring father a child could have.

Gary's current girlfriend, Kate-Lynn Charest also wrote a letter. She too has a young son – her child is a little older than Connor. The majority of her letter describes her view of Connor and Gary's relationship. She clearly thinks the world of Gary, and describes Gary as "one of the most amazing fathers that I know." Not only is Gary a wonderful father to Connor, but he acts as a father figure to Kate's son as well.

Gary was 23 years old when he became a super-moderator for Applanet. He was single and childless; he had no one to think about except himself really. Since that time, he has matured greatly; this is demonstrated to the Court through the words of his friends and family, but also by the fact that CVS Health hired Gary even with this sentencing hanging over his head. He has been there for a year, in a good and stable job that allows him to provide for his son, and for his mother. Both of whom depend on him – and almost solely on him – for their well-being.

The Government filed a motion asking the Court for a Downward Departure based on Gary's substantial assistance. He testified – at length – in David Lee's trial and was willing to testify at Lee's retrial if necessary.

8

He accepted responsibility for his actions in Applanet and SnappzMarket and awaits his punishment. But sending him to prison will be devastating to Gary, his son, and his mother. He will lose his job, his home, his ability to provide for his family. He will likely lose custody of his son for more than just any period of incarceration.

Therefore, Gary asks the Court to sentence him to a period of home confinement with community service and a fine. Such a sentence would satisfy the goals of sentencing, while allowing Gary to keep his job, keep his current custody arrangement of his son, and care for his mother.

Respectfully submitted, this 4th day of June, 2018.

GARLAND, SAMUEL, & LOEB, P.C.


*s/Amanda R. Clark Palmer*
Amanda R. Clark Palmer
GA Bar No. 130608

*s/Donald F. Samuel*
Donald F. Samuel
GA Bar No. 624475

3151 Maple Drive
Atlanta, GA 30305
(404) 262-2225
Fax: (404) 365-3843
aclark@gsllaw.com

9

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been formatted with Book Antigua font, 13-point type which complies with the font size requirements of Local Rule 5.1C.

## CERTIFICATE OF SERVICE

I hereby certify that today I have filed a copy of the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send notice of such filing to all parties of record.

This 4th day of June, 2018.

GARLAND, SAMUEL, & LOEB, P.C.


*s/Amanda R. Clark Palmer*
Amanda R. Clark Palmer
GA Bar No. 130608